*In re* BIGNALL, Bankrupt.

*(District Court, E. D. Missouri.* November 9, 1881.

1. BANKRUPTCY—ATTORNEY'S FEES—ACT OF 1875—GENERAL ORDER OF THE SUPREME COURT.

An attorney's fee of $20 is all that can be allowed for obtaining an involuntary adjudication in bankruptcy.

2. SAME—SAME.

Where the assignee of a bankrupt had made an agreement with attorneys whereby they were to prosecute certain cases, and were to receive, if successful, such sum for their services as the court might allow, and they had thereupon instituted suits, gone to some expense and great trouble, and recovered large sums which otherwise would have been lost to the creditors of the bankrupt, an allowance of 20 per cent. upon the amounts recovered *held* reasonable

In Bankruptcy. Petition for counsel fees.

The question here arose upon two petitions of the firm of Taylor & Pollard, attorneys at law, asking for the allowance of certain fees, and the report of the register in bankruptcy, to whom the matter was referred. The register decided that said firm were entitled to a fee of $750 for services as attorneys, on behalf of the petitioning creditors, in obtaining the adjudication of M. C. Bignall as a bankrupt, and to 20 per cent. of the amounts recovered in the suits referred to in the opinion of the court, and so reported. The register's report was excepted to by the Gould Manufacturing Company and S. B. Gould, creditors, who had sought to obtain a fraudulent preference by buying up claims against the bankrupt's estate.

*George M. Stewart,* for petitioners.

*J. M. & C. H. Krum,* for excepting creditors.

TREAT, D. J. I have considered the exceptions to the register's report in this case, and as the attorneys were anxious to have the matter determined before 3 o'clock to-day, I shall announce my conclusions. The attorneys for the petitioning creditors asked for an allowance in the matter, for their services, of the sum of $1,000. The register, under all the facts and circumstances of the case, allowed the attorneys what he considered a reasonable sum, namely, the sum of $750. It is said, from the facts appearing with regard to the matter, that but for the proceedings in bankruptcy the creditors

would have practically received nothing. The supreme court of the United States, under the general orders in bankruptcy, especially Nos. 3 and 39, tried to restrict these matters, so far as a petitioning creditor was concerned, to the ordinary taxable costs in the courts, as stated in the general order, as "in cases of equity." The practice of the district courts had been otherwise. They held that where some creditors proceeded against an estate, and spent money for the benefit of the creditors generally, the general fund ought to be amenable for the result, inasmuch as all the creditors would share in the benefits of the controversy. But the supreme court of the United States, under the act of 1875, concluded to stop that. The exceptions as to that allowance by the register will, therefore, be sustained, except as to the sum of $20, which is the taxable fee.

Now, as to the other matter, what is properly allowable? It seems that the assignee in this case—the original assignee and his successor, the original assignee having resigned—made an agreement with the attorneys in this matter whereby they might pursue this litigation, and recover, if possible, the amounts in dispute; they to receive, if successful, such sum as the court might deem fair compensation for them. No sum was specified. Litigation ensued. The attorneys had to bear certain expenses in the northern district of New York, and had to go backward and forward in the investigation of the same. The result was that they recovered the sum of seventeen thousand and odd dollars in one suit, and in another direction, where there was less labor and trouble, they recovered the sum of $5,300. Now, what is a fair compensation under the circumstances? We have the opinions of a great many of the attorneys of the bar with regard to such matters. The register reports that he thinks this court ought to follow the precedent of the bar, which I think is more honored in the breach than in the observance. I think that the best interests as well as the ethics of the profession require that attorneys shall not do that which was denounced by the common law—speculate in the trial of causes. I have no sympathy for any rule which permits such practice. The parties in the case, or rather the assignee, should have applied to the court for permission to enter into a contract. Nothing of the kind was done. The services, however, have been performed and the money recovered. The party objecting to the allowance in this matter occupies a peculiar relation. I am sorry his attorney is not here. Nearly all the funds of this bankrupt estate would have been absorbed through the instrumentality of this particular party. Being pursued in the United States courts by the

assignee on account of the matter, he bought up all the accounts. After a fierce litigation for over a year, having bought up these claims and finding he must at last meet the result of the litigation, to-wit, a judgment for the entire amount received through his fraudulent contrivances, he now comes in and objects to an allowance of anything in the way of fees for the services which compelled him to answer for the fraud perpetrated on all the creditors generally. The case is peculiar in that aspect, and I mention it merely that this action shall not be considered as a precedent in these matters. The circumstances of this case and its peculiar character must be considered, together with the fact that the party objecting is a fraudulent creditor, who was pursued to the point where he had to surrender to a judgment, in the mean time buying up claims, and finally making a compromise, which, for a long time, I hesitated to permit. He wishes to come in here as a creditor under the bankrupt act, and share in the dividends under these contrivances. As stated by himself, in the argument, he has nineteen-twentieths of the claims, and wishes to avoid paying any expenses. Without indorsing the mode of proceeding with regard to the matter, I merely hold that under the special circumstances of this case the report of the register as to this allowance will be affirmed; or, to put it in precise form, the exceptions thereto will be overruled.

As to the allowance under the general orders in bankruptcy, in consequence of the act of 1875 the sum of $750 will be reduced to $20.

As to the other amount, ordinarily, I would not allow it; but when a party comes in who is guilty of fraud and asks that he may take nineteen-twentieths of the estate, and objects to an allowance for the very services which compelled him to disgorge, I do not think he stands in a very favorable attitude towards the court.